WALLACE WU (State Bar No. 220110)
Wallace.Wu@arnoldporter.com
JESSE MENTZ (State Bar No. 341212)
Jesse.Mentz@arnoldporter.com
OSCAR RAMALLO (State Bar No. 241487)
Oscar.Ramallo@arnoldporter.com
STEPHANIE KANG (State Bar No. 306162)
Stephanie.Kang@arnoldporter.com
SKYLAR WILLIAMS (State Bar No. 341028)
Skylar.Williams@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Attorneys for Plaintiff*
*ARTURO SANTOS GARCIA*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTURO SANTOS GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERTO VARGAS HERNANDEZ,<br><br>Defendant. | Case No. 8:23-cv-946<br>**COMPLAINT FOR:**<br><br>Human Trafficking (Counts 1-9);<br>Labor Violations (Counts 10-18);<br>and Related Common Law Causes of Action (Counts 19-27)<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Arturo Santos Garcia ("Mr. Santos" or "Plaintiff") alleges against his former employer, Defendant Roberto Vargas Hernandez ("Mr. Vargas" or "Defendant"), as follows:

## INTRODUCTION

1.     Mr. Santos brings this action against Defendant for violations of the Federal and California Trafficking Victim Protections Acts, the Federal Fair Labor Standards Act and the California Labor Code, and various common law torts, among others. Defendant brought Mr. Santos into this country with false promises of fair pay and humane treatment. Defendant knowingly and willfully conspired to lure Mr. Santos from his home in Mexico with the promise of working for Defendant to care for his farm animals at his property, a ranch, located in Lake Elsinore, California. Defendant promised Mr. Santos adequate compensation and reasonable hours. Defendant made travel arrangements for Mr. Santos and paid for all his travel expenses to the United States. Defendant promised Mr. Santos he was free to return to Mexico at any time.

2.     Defendant lied. Upon Mr. Santos's arrival to the Unites States, the promises made by Defendant turned out to be false. Defendant's ranch was ground zero for an illegal cockfighting operation, where he raised hundreds of roosters on his ranch to sell to cockfighters in California and Mexico. For approximately three years, Defendant forced Mr. Santos to work at this ranch, caring for wounded roosters and other animals, for an average of sixteen hours per day, seven days per week, for almost no pay. Mr. Santos was confined to *one* meal a day.

3.     Mr. Santos was not free to return to Mexico at any time, as Defendant had promised. Instead, Defendant attempted to intimidate Mr. Santos by insinuating the local police were at his beck and call. And Defendant told Mr. Santos that Mr. Santos could not leave until he had repaid Defendant for the cost of bringing him to the United States. Defendant first told Mr. Santos that repayment would take two years of labor, then changed it to three, then four. Additionally, Defendant

confiscated Mr. Santos's Mexican identification and never returned it. He forbade Mr. Santos from leaving the ranch when he pleased. He tracked Mr. Santos's cell phone usage and calls without his permission. He subjected Mr. Santos to verbal and psychological abuse by keeping Mr. Santos in a constant state of fear of deportation to ensure his silence and obedience. Defendant's actions forced Mr. Santos into involuntary servitude, while simultaneously denying his basic rights of freedom and fair pay.

4.    The laws of this country—and this state—entitle Mr. Santos to much better treatment than he received. He now brings this case seeking the redress they afford.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action alleges violations of federal statutes, including the TVPA (18 U.S.C. §§ 1584, 1589, 1590, 1592, 1593A, 1594, and 1595(a)) and the FLSA (29 U.S.C. §§ 206 and 207).

6.    This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

7.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendant resides in this district, and because a substantial portion of the events or omissions giving rise to this action occurred in this district.

## PARTIES

**A.    Plaintiff**

8.    Plaintiff Arturo Santos Garcia is a citizen of Mexico, and was trafficked to California by Defendant for purposes of forced labor, from on or about April 23, 2019 to on or about June 25, 2022. Mr. Santos currently lives in Moreno Valley, California.

**B.   Defendant**

9.     Upon information and belief, Defendant resides in Fullerton, California, and resided at this location during the time of the events that give rise to this Complaint. Defendant operated a ranch at 34600 Koves Road, Lake Elsinore, California, on which he raised hundreds of roosters and other farm animals. At all times relevant herein Defendant was an employer pursuant to the FLSA and the California Labor Code. Upon information and belief, Mr. Vargas benefited from Mr. Santos's labor and knew or should have known the circumstances under which Mr. Santos labored.

## FACTUAL ALLEGATIONS

**A.   Mr. Santos's Recruitment in Mexico**

10.    For most of his life, Mr. Santos lived and worked in Guerrero, Mexico. He dreamed of one day starting his own bread business, and was always looking for opportunities to work so that he could make progress toward his dream.

11.    In early 2019, Defendant spoke with Mr. Santos on the phone. Defendant told him he owned a ranch in the United States and had been looking for workers.

12.    Defendant explained to Mr. Santos that he just needed someone to feed and provide water to his animals for a few hours a day, that he would be paid, housed, and fed, that he could work for as long or short as he liked and could return to Mexico at any time, and that Defendant would arrange all of the necessary transportation to help him move to the ranch. Defendant offered Mr. Santos the job. Mr. Santos accepted.

13.    Mr. Santos—young, able-bodied, and willing to work hard to pursue his dreams—fit the bill. Moreover, Mr. Santos did not speak English, had no other means or knowledge of how to come to the United States, and was uninformed about American labor laws.

**B.    Mr. Santos's Transportation to the United States and Purported Indebtedness**

14.    Defendant arranged Mr. Santos's transportation. Through a network of Defendant's agents, Mr. Santos was transported from Guerrero, Mexico, to the lobby of Defendant's chicken restaurant, El Pollo Fino, in Anaheim, California.

15.    As part of this process, Mr. Santos gave his Mexican identification to one of Defendant's agents at Defendant's request.

16.    However, unbeknownst to Mr. Santos, Defendant had coordinated the transportation illegally, claimed to have spent $9,500 on the process, demanded that Mr. Santos pay him back, and would continue to use the illegal, exorbitantly expensive purported debt as leverage to keep Mr. Santos from leaving.

17.    Mr. Santos never received his Mexican identification back.

**C.    Mr. Santos's Servitude in the United States**

18.    As the transportation differed from Defendant's representations, so too did the work. When Mr. Santos arrived at Defendant's rural ranch, he was not asked to work for only a few hours a day. Instead, he was forced to work twelve to eighteen hours a day, from 5am to 11pm, for seven days a week, with no days off. These grueling conditions persisted for three years.

19.    The pay was also far from what Defendant had described. Defendant "paid" Mr. Santos by sending a small sum of money directly to Mr. Santos's family in Mexico, which Mr. Santos never touched or received. Defendant then "paid" Mr. Santos an even smaller, separate sum of money—but this money, too, never touched Mr. Santos's hands. Instead, Defendant held it for him. When Mr. Santos escaped, Defendant did not pay him the money he was holding for him.

20.    The total amount of money Defendant sent Mr. Santos's family, which is the total amount Mr. Santos could be said to have received for his labor, equated to less than one dollar and twenty-five cents for every hour worked. By contrast, the

minimum wage for California agricultural workers during the same period was $10.50 per hour when Mr. Santos started and $14 per hour when he left.

21.   The living conditions likewise deviated substantially from what Defendant had described. Despite the grueling labor and sixteen hour days, Mr. Santos was given *one* meal a day, every day, for three years. When Mr. Santos asked for more food, Defendant told him he did not need any more than one meal a day, and to stop asking. He was housed in substandard living conditions in a trailer on the property. The kitchen did not work, and the trailer was rat-infested.

22.   The entire time, Defendant verbally harassed Mr. Santos. Every week, multiple times a week, Defendant would yell at Mr. Santos. He called him vulgar names (*e.g.*, "*pendejo*"); he called him lazy; he accused him of stealing; and he threatened to physically fight Mr. Santos.

23.   Defendant knew, at the time of recruiting Mr. Santos, that no one would agree to work under conditions like this. He knew, or should have known, that forcing someone to work for free is illegal. So the job description he offered to Mr. Santos was rife with misrepresentations—about the transportation, the work, the accommodations, the hours, and the pay. Mr. Santos would not have come to work for Defendant had he been truthful. But Defendant lied, Mr. Santos relied on those lies, and Mr. Santos came to the ranch and found himself working non-stop for no pay.

### D.   Defendant Benefitted from Mr. Santos's labor

24.   While Mr. Santos labored away years of his life without lawful pay, Defendant benefitted substantially. Mr. Santos took care of Defendant's ranch, and the hundreds of roosters and other animals on it, for Defendant. Defendant then used those roosters to support his illicit cockfighting operation. Defendant used some of the roosters in cockfights he would host himself. Others, he sold in interstate and foreign commerce, including in Mexico. Attendees at these cockfights placed bets, and Defendant profited from these operations. After the cockfights, Defendant

1  would bring the wounded roosters back to the ranch, where he instructed Mr. Santos

2  to tend to them.

3     25.    Defendant's horses, hens, and goats were likewise sustained by Mr.

4  Santos's labor. Defendant sold eggs from the hens and profited from those sales.

5     **E.    Defendant Prevented Mr. Santos from Leaving**

6     26.    Defendant made clear to Mr. Santos that leaving was not an option. He

7  did so in direct contradiction of his original description of the work in Mexico,

8  where he told Mr. Santos he could work as long as he liked and could return at any

9  time.

10    27.    Defendant told Mr. Santos that he could only leave after he worked for

11 two years in order to pay off the debt. After two years of working, Defendant

12 changed the length of time required to three years. And after three years, he changed

13 it to four.

14    28.    Defendant provided no means by which Mr. Santos could pay back the

15 purported debt, because in addition to shifting the payoff deadline whenever Mr.

16 Santos reached it, Defendant never kept a record of Mr. Santos's hours, and paid

17 Mr. Santos almost nothing. The "wages" he "paid" Mr. Santos were never given to

18 Mr. Santos. Mr. Santos had no other financial resources, no money for return

19 airfare, and no other opportunities to work or earn money outside of the ranch.

20    29.    Mr. Santos did not understand the legal system in the United States or

21 the pattern of debt bondage commonly used by labor traffickers. So Mr. Santos

22 continued working, hoping that Defendant would credit his work against the debt

23 with a few more months of work.

24    30.    Defendant told Mr. Santos that, if he left, law enforcement would arrest

25 him, and either return him to Defendant or deport him to Mexico. Defendant invited

26 his friend over, who appeared to be a police officer, in plain view of Mr. Santos.

27 After the friend left, Defendant told him that he could have the officer monitor who

28 was coming and going from the ranch. Mr. Santos believed him.

31.     Defendant threatened to mutilate a worker who escaped. When one of the other workers on the ranch, Gerardo, escaped, Defendant stated he wanted to send someone to find him and to physically break his arms and legs. He made this threat in front of Mr. Santos, so that Mr. Santos would get the message: if he left, Defendant would make sure the same thing would happen to him.

32.     Defendant also made clear that there would be no place for Mr. Santos to hide. Defendant boasted that he had contacts in Mexico and could hunt him down if he returned home. To Mr. Santos, these threats again seemed well-founded. Defendant had found him in Mexico once. He could do it again. Moreover, Defendant had been in contact with Mr. Santos's family in Mexico, adding to Mr. Santos's fear that Defendant could hurt his family members there.

33.     Defendant and his agents had arranged Mr. Santos's travel to the United States. At Defendant's request and as part of this process, Mr. Santos gave his Mexican identification to Defendant's agent. Mr. Santos never received it back. Thus, Mr. Santos found himself in a foreign land, with no means of identification or documentation which would enable him to travel back home. By arranging transportation but confiscating Mr. Santos's documentation, Defendant had arranged, in effect, a one-way ticket into the United States, with no opportunity to return.

34.     Defendant monitored Mr. Santos's daily activity. Defendant told Mr. Santos that his friend, who appeared to be a police officer, could monitor who came and went from the ranch. Mr. Santos was "given" a cell phone by Defendant which was closely tracked. Mr. Santos was reprimanded and insulted if he used the phone for too long. Defendant installed security cameras. If Mr. Santos left, Defendant would know it.

35.     Defendant imposed a culture of ever-present intimidation and powerlessness on Mr. Santos. Mr. Santos endured near-constant mental, emotional,

and verbal abuse from Defendant. Defendant called him lazy, abused him with vulgarities like "*pendejo*", and falsely accused him of stealing.

36.    Defendant used the roosters raised on his farm to host illicit cock-fighting events. From the nature of the events, Mr. Santos knew that each one of Defendant's guests at these events was comfortable with breaking the law, powerful enough not to care, wealthy enough to have money to gamble, and friendly with Defendant.

37.    Defendant isolated Mr. Santos, both geographically and socially. The ranch was located in the foothills outside Lake Elsinore, with mountains surrounding the ranch and only one long road going in and out. This had the effect of ensuring that if Mr. Santos escaped, it would be a long time before he could ask for help. He would either have to walk into the mountains or down a long, monitored road, in a foreign country where he did not speak the language, and where he had been led to believe that the police would arrest and return him on sight. And by monitoring Mr. Santos's cell phone usage, Defendant also isolated him socially, preventing him from speaking with his family, or building relationships with other Spanish speakers. Mr. Santos mostly worked alone on the ranch, and he was prohibited from speaking with visitors.

38.    Mr. Santos stayed, working day after day, for one meal a day, for three years, until he finally escaped on the one night where Defendant and his family were guaranteed to be occupied with something else: the night of Defendant's daughter's wedding.

**F.    Mr. Santos Suffered Psychological and Physical Trauma**

39.    Defendant's blatant disregard for Mr. Santos's well-being, manifested in Defendant restricting his ability to leave; subjecting him to near complete isolation and a climate of fear and violence; confiscating his identification; verbal abuse and continual threats of arrest and deportation; continually violating his contractual and statutory rights; forcing him to prepare animals to be subjected to intentional

violence and nurse them back to health after, placed him under extreme emotional, psychological, and physical duress.

40.    Three years of working long hours under these stressful and violent conditions with minimal nutrition, no sick leave, no health care, no health insurance, no pay, and no opportunity to leave, took their toll on Mr. Santos's mental and physical well-being. He lived in a constant state of exhaustion and anxiety, and that anxiety is still with him today.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

TRAFFICKING, 18 U.S.C. § 1590

41.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

42.    Defendant knowingly recruited, harbored, transported, provided, and obtained Mr. Santos for labor in violation of 18 U.S.C. § 1590.

43.    Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of trafficking.

44.    Section 1590 makes it a crime to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means any person for labor or services in violation of [Chapter 77 of Title 18 of the United States Code]."

45.    As alleged herein, Defendant violated multiple sections of Chapter 77, including 18 U.S.C. §§ 1581 (peonage), 1584 (involuntary servitude), and 1589 (forced labor).

46.    Defendant recruited, harbored, transported, provided, and obtained Mr. Santos for labor in violating these sections. Defendant reached out to Mr. Santos in Mexico, offered him employment at his ranch in the United States, and arranged all transportation for him. Upon arrival, Defendant held Mr. Santos at the ranch while he was subjected to peonage, involuntary servitude, and forced labor.

47.    As the same person who subjected Mr. Santos to these violations, Defendant undertook the recruitment, harboring, transportation, provision, and obtaining of Mr. Santos with full knowledge that he was doing so for the purposes of employing him under conditions of peonage, involuntary servitude, and forced labor.

48.    Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### FORCED LABOR, 18 U.S.C. § 1589

49.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

50.    Defendant provided and obtained the labor of Mr. Santos in violation of 18 U.S.C. § 1589.

51.    Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of forced labor.

52.    Under Section 1589, it is unlawful to "provide[] or obtain[] the labor or services of a person by any one of, or by any combination of the following means— by . . . threats of force . . . to that person or another person; by . . . threats of serious harm to that person or another person; by means of the abuse or threatened abuse of law or legal process; or by means of any scheme or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm . . . ." The section defines "abuse or threatened abuse of law or legal process" as "the use or threatened use of

a law or legal process . . . in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."

53.    Defendant provided and obtained the labor and services of Mr. Santos by threats of force and threats of serious harm to Mr. Santos and to another person, Gerardo, when he threatened to beat Mr. Santos if he ceased working and send someone to break Gerardo's arms for leaving the ranch.

54.    Defendant further provided and obtained the labor and services of Mr. Santos by threatened abuse of law or legal process when he invited a police officer to his home, and told Mr. Santos that this officer would arrest him and have him deported if he ever left the ranch. By threatening to have Mr. Santos arrested for leaving his ranch and deported from the country, Defendant threatened to use law or legal process in a purpose for which it was not designed, in order to exert pressure on Mr. Santos to refrain from taking the action of leaving Defendant's ranch.

55.    Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### INVOLUNTARY SERVITUDE, 18 U.S.C. § 1584

56.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

57.    Defendant knowingly and willfully held Mr. Santos to involuntary servitude in violation of 18 U.S.C. § 1584.

58.    Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of involuntary servitude.

59.    Under Section 1584, it is unlawful to "knowingly and willfully hold [another person] to involuntary servitude . . . or [to] bring within the United States any person so held."

60.    By threatening to have Mr. Santos arrested and threatening to break the limbs of those who left, Defendant placed Mr. Santos in such fear of harm that he was afraid to leave. By forcing Mr. Santos to work on his ranch and preventing his departure through such threats and intimidation, Defendant held Mr. Santos to involuntary servitude.

61.    By transporting Mr. Santos to the United States for such employment, Defendant brought within the United States a person in involuntary servitude.

62.    Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION

UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS, 18 U.S.C. § 1592

63.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

64.    Defendant knowingly removed, confiscated, and possessed a purported government identification of another person, in the course of violating other sections of the TVPA with respect to Mr. Santos, in violation of 18 U.S.C. § 1592.

65.   Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of unlawful conduct with respect to documents.

66.   Under Section 1592, it is unlawful to "knowingly remove[], confiscate[], or possess[] any actual or purported government identification document, of another person—in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a); with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person when that person is or has been a victim of a severe form of trafficking in persons."

67.   As alleged herein, Defendant violated 18 U.S.C. §§ 1581, 1584, 1589, and 1590.

68.   By promising to arrange Mr. Santos's transportation to the United States in the process of securing his labor, requesting that Mr. Santos give Defendant's agent his Mexican identification, and never returning his identification, Defendant knowingly removed, confiscated, and possessed a government identification document of another person in the course of violating sections 1581, 1584, 1589, and 1590.

69.   Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

# FIFTH CAUSE OF ACTION

KNOWINGLY BENEFITTING FROM TVPA VIOLATIONS, 18 U.S.C. § 1593A

70.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

71.    Defendant knowingly benefitted from participating in a venture which engaged in the exploitation of Mr. Santos in violation of multiple sections of the TVPA, and Defendant did so knowingly or in reckless disregard of the fact that the venture had engaged in such violations, thereby violating 18 U.S.C. § 1593A.

72.    Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of those who knowingly benefit from participation in a venture in violation of the TVPA.

73.    Under Section 1593A, it is unlawful to "knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in any act in violation of [Chapter 77 of Title 18 of the United States Code], knowing or in reckless disregard of the fact that the venture has engaged in such violation . . . ."

74.    As alleged in other causes of action, Defendant forced Mr. Santos to work on Defendant's ranch in violation of several sections of the TVPA.

75.    By using the roosters from the ranch in his cockfighting operations without paying Mr. Santos for his care of the roosters, Defendant benefitted financially from participating in a venture in violation of the TVPA. Also, by selling eggs from the hens without paying Mr. Santos for his care for the hens, Defendant benefitted financially from participating in a venture in violation of the TVPA. Moreover, as the one responsible for Mr. Santos's suffering, Defendant's financial benefit was procured knowingly and in reckless disregard of the fact that the venture was profiting from forced labor.

76.    Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to

18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION

### PEONAGE, 18 U.S.C. § 1581

77.     Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

78.     Defendant held Mr. Santos "to a condition of peonage" in violation of 18 U.S.C. § 1581.

79.     Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of peonage.

80.     Under Section 1581, it is unlawful to "hold[] . . . any person to a condition of peonage."

81.     By telling Mr. Santos he owed Defendant $9,500 and that he could only leave once he had paid the debt, and then by telling Mr. Santos that he could only pay it off by working for two years, then three, and then four, Defendant held Mr. Santos to a condition of peonage. Defendant used threats of arrest and deportation, verbal abuse, and oppressive conditions to compel Mr. Santos's continued service and hold him to a condition of peonage.

82.     Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

COMPLAINT

## SEVENTH CAUSE OF ACTION

ENTICEMENT INTO SLAVERY, 18 U.S.C. § 1583

83.   Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

84.   Defendant enticed, persuaded, and induced Mr. Santos to go to another place with the intent that he would be held as a slave in violation of 18 U.S.C. § 1583.

85.   Mr. Santos brings this claim for relief pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of enticement into slavery.

86.   Under Section 1583, it is unlawful to "entice[], persuade[], or induce[] any other person to go . . . to any other place with the intent that he . . . may be made or held as a slave . . .".

87.   Defendant contacted Mr. Santos in Mexico, offering him a fictional job with fictional pay and fictional benefits, so that Mr. Santos would be enticed, persuaded, and induced by the false descriptions of a good job to go to the United States. Defendant did so with the intent that upon Mr. Santos's arrival, Mr. Santos would become his slave, working on the ranch all day, every day, for only one meal a day, without being able to leave. By inducing Mr. Santos to travel with the intent of making him a slave, Defendant violated 18 U.S.C. § 1583.

88.   Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to 18 U.S.C. § 1595, Mr. Santos is entitled to recover damages, and reasonable attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

TRAFFICKING IN VIOLATION OF CALIFORNIA LAW, CAL. CIV. CODE § 52.5

89.    Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

90.    Mr. Santos brings this claim for relief pursuant to California Civil Code § 52.5, which provides a civil cause of action for victims of violations of California Penal Code § 236.1.

91.    Defendant violated California's human trafficking laws in violation of California Penal Code § 236.1.

92.    Under California Penal Code § 236.1, it is unlawful to "deprive[] or violate[] the personal liberty of another with the intent to obtain forced labor or services . . . ."

93.    The statute defines "deprivation or violation of the personal liberty of another" as "substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out."

94.    The statute defines "coercion" as including "the abuse or threatened abuse of the legal process" and "debt bondage."

95.    The statute defines "duress" as including "knowingly destroying, concealing, removing, confiscating, or possessing an actual or purported passport or immigration document of the victim."

96.    When Defendant forced Mr. Santos to work all day, every day, for only one meal a day and for less than minimum wage, he obtained forced labor from Mr. Santos.

97.    When Defendant enticed Mr. Santos to work for him through false descriptions of the job, living conditions, pay, and working arrangements, Defendant deprived Mr. Santos of liberty through deceit.

98.    When Defendant threatened to break the arms of a laborer who had run away, he deprived Mr. Santos of liberty through fear and through the threat of unlawful injury to another person, under circumstances where Mr. Santos apprehended that Defendant would likely carry it out.

99.    When Defendant invited a police officer friend to his property, and then told Mr. Santos that he could call his friend at any time and have Mr. Santos arrested and deported if he ever left, Defendant deprived him of liberty through the threatened abuse of the legal process, which is coercion.

100.  When Defendant told Mr. Santos he owed a debt to Defendant and could not leave until he worked to pay it off, despite never keeping track of the debt and making it impossible for Mr. Santos to ever pay it off, Defendant deprived him of liberty through debt bondage, which is a form of coercion under the statute.

101.  When Defendant instructed Mr. Santos to give his Mexican identification to Defendant's agent, and then never returned it to Mr. Santos, Defendant deprived him of liberty by knowingly confiscating, concealing, and possessing the actual or purported immigration document of Mr. Santos, which is a form of duress under the statute.

102.  When Defendant deprived Mr. Santos of his personal liberty, he did so fully intending that such deprivation would result in Mr. Santos's continued provision of forced labor on Defendant's ranch.

103.  Defendant thus deprived Mr. Santos of his personal liberty with intent to obtain forced labor or services in violation of California Penal Code § 236.1, and is liable to Mr. Santos for civil relief under California Civil Code § 52.5, including treble damages.

104.  Mr. Santos has suffered damages, including mental suffering, emotional distress, humiliation, and lost wages, as a result of Defendant's conduct. Pursuant to California Civil Code § 52.5, Mr. Santos is entitled to recover three times his actual damages, compensatory damages, punitive damages, and attorneys' fees and costs, including pre- and post- judgment interest, in amounts to be proven at trial. The intentional and outrageous nature of Defendant's conduct merits an award of punitive damages.

## NINTH CAUSE OF ACTION

### INVOLUNTARY SERVITUDE, CAL. PENAL CODE § 181

105.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

106.  By the acts alleged herein, Defendant has held and attempted to hold Mr. Santos in involuntary servitude in violation of California Penal Code § 181.

## TENTH CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA, 29 U.S.C. § 206(A)(1) AND § 206(F)

107.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

108.  Defendant violated the provisions of the FLSA by failing to pay Mr. Santos the federal minimum wage. 29 U.S.C. § 206(a)(1), (f).

109.  The federal minimum wage throughout Mr. Santos's employment was $7.25 per hour. 29 U.S.C. § 206(a)(1).

110.  Defendant was Mr. Santos's employer within the meaning of the FLSA. 29 U.S.C. § 203(d). Defendant knowingly required or permitted Mr. Santos to work an average of sixteen hours a day, seven days a week.

111. Defendant was aware or should have been aware of the requirement to pay Mr. Santos the statutorily defined minimum wage for his labor. Defendant's failure to pay the minimum wage was willful.

112. As a direct and proximate result of these actions, under 29 U.S.C. § 216(b), Mr. Santos is entitled to recover from Defendant his unpaid wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including post-judgment interest (in the event there are no liquidated damages), in amounts to be proven at trial.

## ELEVENTH CAUSE OF ACTION

FAILURE TO PAY OVERTIME UNDER THE FLSA, 29 U.S.C. § 207(A)

113. Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

114. Defendant violated the provisions of the FLSA by failing to pay Mr. Santos the significant overtime wages he was entitled to under 29 U.S.C. § 207(a).

115. Defendant was Mr. Santos's employer within the meaning of the FLSA. 29 U.S.C. § 203(d). Defendant knowingly required or permitted Mr. Santos to work an average of sixteen hours a week, seven days a week.

116. Defendant was aware or should have been aware of the requirement to pay Mr. Santos the statutorily required overtime pay for his labor. Defendant's failure to pay overtime wages was willful.

117. As a direct and proximate result of these actions, under 29 U.S.C. § 216(b), Mr. Santos is entitled to recover from Defendant his unpaid overtime, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including post-judgment interest (in the event there are no liquidated damages), in amounts to be proven at trial.

## TWELFTH CAUSE OF ACTION

FAILURE TO PAY MINIMUM WAGE (CAL. LAB. CODE §§ 1182.11, 1182.12, 1194(A), 1194.2, 1197; IWC WAGE ORDER #14)

118.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

119.  Under California Labor Code §§ 1182.11, 1182.12, 1194(a), 1194.2, 1197; and IWC Wage Order #14, Mr. Santos was entitled to be paid a lawful minimum wage for all hours worked in Defendant's employ.

120.  Defendant was Mr. Santos's employer within the meaning of California Labor Code, § 1182.12 and IWC Wage Order #14.

121.  During the period of Mr. Santos's employment, the minimum wage in California ranged from $10.50 to $14 per hour. Cal. Lab. Code § 1197.

122.  Defendant was aware of or should have been aware of the requirement to pay Mr. Santos the statutorily defined minimum wage for his labor.

123.  Defendant knowingly failed to compensate Mr. Santos at the wage rate prescribed by law at the relevant times.

124.  Defendant's failure to pay Mr. Santos the minimum wage was willful.

125.  As a result of Defendant's willful violations of the California Labor Code and IWC Wage Order #14, Mr. Santos is entitled to recover from Defendant his unpaid wages, liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial. Cal. Lab. Code §§ 1194, 1194.2.


## THIRTEENTH CAUSE OF ACTION

FAILURE TO PAY OVERTIME WAGES UNDER CALIFORNIA LABOR CODE (CALIFORNIA LABOR CODE §§ 1194, 1198; IWC WAGE ORDER #14)

126.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

127.  Under California Labor Code §§ 1194 and IWC Wage Order #14, starting on January 1, 2022, Mr. Santos was entitled to time and a half of the minimum wage for hours worked in excess of 55 hours per week.

128.  Under California Labor Code §§ 1194 and IWC Wage Order #14, during the whole time Mr. Santos was employed, he was entitled to time and a half of the minimum wage for the first eight hours worked on the seventh workday per week, and double the minimum wage for each hour worked in excess of eight hours on the seventh workday per week.

129.  Defendant was Mr. Santos's employer within the meaning of California Labor Code, § 1182.12 and IWC Wage Order #14. Defendant was therefore obligated to pay Mr. Santos one and a half or two times the applicable minimum wage, which ranged from $10.50 to $14 per hour while he was employed by Defendant. California Labor Code §§ 1194, 1198; IWC Wage Order #14.

130.  Defendant required Mr. Santos to work an average of sixteen hours per day, seven days a week, on Defendant's ranch, but failed to pay Mr. Santos any overtime wages.

131.  Defendant was aware or should have been aware of the requirement to pay Mr. Santos time and a half or two times the statutorily defined state minimum wage for hours worked in excess of the standard workweek while employed by the Defendant.

132.  Defendant's failure to pay Mr. Santos overtime wages was willful.

133.  In addition, Defendant failed to maintain payroll or other records documenting wages earned, hours worked, and rest or meal periods taken by Mr. Santos, in violation of IWC Wage Order #14.

134.  As a result of Defendant's willful violations of the California Labor Code, and IWC Wage Order #14, Plaintiff is entitled to recover from Defendant his unpaid wages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial. Cal. Labor Code § 1194.

# FOURTEENTH CAUSE OF ACTION

## FAILURE TO PROVIDE MEAL PERIODS

### (CAL. LAB. CODE §§ 226.7, 512; IWC WAGE ORDER #14)

135.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

136.  Under California Labor Code §§ 226.7 and 512 and IWC Wage Order #14, for every workday of more than five hours, Mr. Santos was entitled to an uninterrupted half-hour meal period in which he was relieved of all duties. For every workday of more than ten hours, Mr. Santos was entitled to a second uninterrupted half-hour meal period.

137.  Defendant was Mr. Santos's employer within the meaning of California Labor Code § 1182.12 and IWC Wage Order #14. Defendant was therefore obligated to provide Mr. Santos with at least one, and often two, uninterrupted half-hour meal periods per workday in which he was relieved of all duties.

138.  Defendant failed to provide Mr. Santos with uninterrupted meal periods.

139.  As a result of Defendant's violations of California Labor Code §§ 226.7 and 512 and IWC Wage Order #14, Mr. Santos is entitled to recover from Defendant one hour of pay for each workday that a meal period was not provided and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

# FIFTEENTH CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

### (CAL. LAB. CODE §§ 226.7; IWC WAGE ORDER #14)

140.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

141.  Under California Labor Code §§ 226.7 and IWC Wage Order #14, Mr. Santos was entitled to a ten-minute rest period for every four hours worked.

142.  Defendant was Mr. Santos's employer within the meaning of California Labor Code § 1182.12 and IWC Wage Order #14. Defendant was therefore obligated to provide Mr. Santos with a ten-minute rest period for every four hours worked.

143.  Defendant failed to provide Mr. Santos with rest periods.

144.  As a result of Defendant's violations of California Labor Code § 226.7 and IWC Wage Order #14, Mr. Santos is entitled to recover from Defendant one hour of pay for each workday that a rest period was not provided and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

## SIXTEENTH CAUSE OF ACTION

### FAILURE TO PAY UPON TERMINATION OR RESIGNATION

#### (CAL. LAB. CODE §§ 201-203)

145.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

146.  Under California Labor Code § 202, Mr. Santos was entitled to be paid all earned and unpaid wages immediately upon termination or within 72 hours of his resignation.

147.  Defendant was Mr. Santos's employer within the meaning of the California Labor Code and IWC Wage Order #14. Defendant was therefore obligated to pay Mr. Santos all earned but unpaid wages, resulting from Defendant's failure to pay Mr. Santos the minimum wage and applicable overtime amounts, at the time he was terminated or resigned from Defendant's employment in or about June 2022.

148.  Defendant has not paid Mr. Santos for all earned but unpaid wages.

149.  Defendant was aware or should have been aware of the requirement to pay Mr. Santos all earned but unpaid wages immediately upon his termination or resignation.

150.  Defendant's failure to pay Mr. Santos all earned but unpaid wages was willful.

151.  As a result of Defendant's knowing and intentional violations of California Labor Code §§ 201-202, Mr. Santos is entitled to recover from Defendant penalties allowed under California Labor Code § 203 and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be proven at trial.

## SEVENTEENTH CAUSE OF ACTION

### Solicitation of Employee Through Misrepresentation

#### (Cal. Lab. Code §§ 970, 972)

152.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

153.  California Labor Code § 970 prohibits any person from influencing, persuading, or engaging any person to change from one place to another in the state for the purpose of working in any branch of labor, by means of knowingly false representations, concerning the compensation to be paid for such work.

154.  California Labor Code § 972 provides a private right of action for victims of violations of § 970 and allows for double damages—including emotional damages—resulting from such misrepresentations.

155.  Defendant influenced and persuaded Mr. Santos to relocate from Mexico to California by promising a well-paying job with fair working hours, housing, and meals. However, Defendant did not provide Mr. Santos what he promised. On information and belief, Defendant acted fraudulently and with malice in falsely promising Mr. Santos such compensation and then failing to ever pay it.

156.  As a direct and proximate result of these actions, Mr. Santos has sustained damages, including lost wages, mental suffering, humiliation and emotional distress, entitling him to damages in an amount to be proven at trial equal to twice the amount of the actual damages due to such misrepresentations plus punitive damages.

## EIGHTEENTH CAUSE OF ACTION

### UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200

157.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

158.  By the acts alleged herein, Defendant has engaged in fraudulent and illegal conduct.

159.  Defendant's fraudulent and illegal conduct is likely to recur, warranting injunctive relief.

160.  As a result of Defendant's fraudulent and illegal conduct, Mr. Santos has lost money or property, entitling him to restitutionary relief.

## NINETEENTH CAUSE OF ACTION

### BREACH OF CONTRACT

161.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

162.  At all relevant times, a contract existed between Mr. Santos and Defendant that was oral, written, and/or implied. The terms of the contract or contracts upon which Mr. Santos relied included the implied agreement that he would be paid wages and provided other wage and hour benefits in accordance with all applicable federal and California laws, rules, and regulations.

163.  Defendant knowingly and willfully breached his contract with Mr. Santos by failing to compensate Mr. Santos for his services according to the terms

agreed to by the parties, and by substantially changing the agreed-to nature and scope of Mr. Santos's employment. Additionally, Defendant breached the implied agreement that Mr. Santos would be provided wage and hour benefits that did not violate federal or California law. Defendant also breached the contract implied covenant of good faith and fair dealing through fraud, concealment, and misrepresentations, as set forth in the foregoing paragraphs.

164. As a proximate result of Defendant's breach, Mr. Santos sustained damages, including lost wages. He also experienced pain and suffering, including emotional distress, embarrassment, and humiliation.

165. Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos also is entitled to an award of punitive damages in an amount to be determined at trial.

## TWENTIETH CAUSE OF ACTION

### FRAUD AND NEGLIGENT MISREPRESENTATION

166. Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

167. Defendant, directly or through his agents, knowingly and negligently made misrepresentations of, and failed to disclose, material facts regarding Mr. Santos's employment. These included, but were not limited to, misrepresentations of, and omissions regarding, the nature of the work required and the amount of money Mr. Santos would be paid.

168. When Defendant, directly or through his agents, made these representations, he either knew the representations were false, made the representations recklessly with no regard for their truth, or had no reasonable grounds for thinking that the representations were true. Mr. Santos is informed and believes, and on that basis alleges, Defendant made the representations with the intent to induce Mr. Santos to come to the United States and later to induce him to

remain in the United States. At the time Mr. Santos acted, he did not know that the representations were false and believed them to be true. Mr. Santos considered the representations material and reasonably and substantially relied upon the representations to leave his home in Mexico and later to remain in the United States.

169.  Defendant had, and continue to have, both access to and actual possession of superior knowledge and special information with regard to facts relevant to a determination of Mr. Santos's rights as an employee in California. This superior knowledge and information includes, but is not limited to, knowledge of legal requirements for employers and amounts established by California law, such as the minimum wage. As a result of Defendant's access to superior knowledge and his actual possession of such knowledge, Defendant gained an unconscionable advantage and exerted undue influence over Mr. Santos, who was ignorant of facts relevant to his employment status and rights and who was not in a position to become informed of such facts.

170.  Despite Defendant's superior knowledge and information, Defendant intentionally concealed from Mr. Santos that he was entitled to minimum wage, overtime compensation, and other legal protections and benefits available to employees under federal and California law, and misled him to believe the opposite.

171.  As a proximate result of Defendant's actions, Mr. Santos sustained damages, including lost wages. He also experienced pain and suffering, including emotional distress, embarrassment, and humiliation.

172.  Because of the intentional and outrageous nature of Defendant's conduct, Mr. Santos also is entitled to an award of punitive damages in an amount to be determined at trial.

COMPLAINT

# TWENTY-FIRST CAUSE OF ACTION

## UNJUST ENRICHMENT

173. Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

174. In the alternative to breach of contract, should the written contract between Mr. Santos and Defendant be found to be unenforceable, Defendant was unjustly enriched by his labor.

175. Defendant received a financial benefit by accepting Mr. Santos's labor while paying him at a rate far below the applicable minimum wage, and this benefit was at Mr. Santos's expense, because he received subminimum wages for his labor.

176. It would be unjust for Defendant to retain the money he saved by undercompensating Mr. Santos because he obtained the benefit of his labor through fraud, coercion, and/or the conscious interference of his legally protected interests.

177. As a result of Defendant's unjust enrichment, Mr. Santos is entitled to restitution, in amounts to be proven at trial.

# TWENTY-SECOND CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

178. Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

179. Defendant acted well beyond the bounds of normal human decency by threatening Mr. Santos on a regular basis with physical harm, legal harm, and deportation. Defendant prevented and hindered Mr. Santos's ability to communicate with others and confined him to the ranch. These acts isolated Mr. Santos from the local community and from his family in Mexico. Further, Defendant provided Mr. Santos with only one meal a day, falsely accused him of stealing, called him foul names, threatened him with violence, and instilled fear of legal harm and

deportation by projecting ready access to law enforcement to suit Defendant's purpose.

180.  As a result of Defendant's outrageous and extreme behavior, Mr. Santos was put in fear of his safety and health, and suffered extreme emotional distress.

181.  Defendant knowingly and intentionally acted with the goal of causing Mr. Santos extreme emotional distress.

182.  Mr. Santos is entitled to compensatory and punitive damages in an amount to be determined at trial.

## TWENTY-THIRD CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

183.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

184.  Defendant acted well beyond the bounds of normal human decency by threatening Mr. Santos on a regular basis with physical harm, legal harm, and deportation. Defendant prevented and hindered Mr. Santos's ability to communicate with others and confined him to the ranch. These acts isolated Mr. Santos from the local community and from his family in Mexico. Further, Defendant provided Mr. Santos with one meal day, falsely accused him of stealing, called him foul names, threatened him with violence, and instilled fear of legal harm and deportation by projecting ready access to law enforcement to suit Defendant's purpose.

185.  As a result of Defendant's actions, Mr. Santos was put in fear of his safety and health, and has suffered extreme emotional distress.

186.  Defendant acted at least negligently in causing Mr. Santos extreme emotional distress.

187.  Mr. Santos is entitled to compensatory and punitive damages in an amount to be determined at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TWENTY-FOURTH CAUSE OF ACTION

### NEGLIGENCE

188.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

189.  Defendant stood in a special relationship with Mr. Santos, based on the facts alleged in this Complaint, including but not limited to the following: Defendant arranged Mr. Santos's travel to the United States; he procured Mr. Santos's presence in the United States on fraudulent pretenses; he insisted Mr. Santos live on Defendant's ranch; he knew Mr. Santos spoke little English and had no familiarity with the customs, culture, society or laws of the United States; and, on information and belief, he knew at the time he brought Mr. Santos to the United States that he had no money for return airfare, no documentation to return with because Defendant had confiscated his Mexican identification, and no other means of earning money in the United States.

190.  The California Labor Code imposes duties on employers, including the duty to "furnish employment and a place of employment that is safe and healthful for employees therein" and "[t]o do every other thing reasonably necessary to protect the life, safety, and health of employees." California Labor Code §§ 6400 and 6403.

191.  By virtue of the relationship described above and Defendant's position as Mr. Santos's employer, Defendant's duty of reasonable care toward Mr. Santos under the circumstances included but was not limited to: (1) a duty to provide reasonable accommodations and a safe working and living environment; (2) a duty of reasonable care under the circumstances to protect Mr. Santos's emotional state; (3) a duty to allow Mr. Santos reasonable rest from his work, including those rest periods required by law; (4) a duty to ensure Mr. Santos was informed of his rights as an employee under the laws of the United States and the State of California.

192.  On the basis of the facts alleged in this Complaint, Defendant assumed a duty of care to Mr. Santos beyond that owed to the public in general, including but not limited to the duties listed above.

193.  Defendant breached these duties owed to Mr. Santos by the acts and omissions alleged in this Complaint, including but not limited to subjecting Mr. Santos to threats and abuse and failing to provide Mr. Santos reasonable rest periods.

194.  As a direct and proximate result of these actions, Mr. Santos has sustained damages and pain and suffering, including emotional distress, embarrassment, and humiliation

195.  Mr. Santos is entitled to damages in an amount to be determined at trial.

## TWENTY-FIFTH CAUSE OF ACTION

### NEGLIGENCE PER SE

196.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

197.  The services provided by Mr. Santos to Defendant were performed under conditions that violate various federal and state laws as referenced in the foregoing paragraphs. These include, but are not limited to, federal and state labor and anti-trafficking laws. Such laws were enacted to protect workers from economic and personal injuries caused by forced labor, poverty-level wages, unduly long working hours, and other substandard working conditions. The acts and omissions of Defendant, as alleged in this Complaint, were a substantial factor contributing to the illegal working conditions under which Mr. Santos labored.

198.  As a person who was trafficked and forced to labor long hours for poverty-level wages, Mr. Santos is among the class of persons that the statutes and regulations referenced in the foregoing paragraphs were designed to protect. Further, Mr. Santos's injuries are of the type that the foregoing statutes and

regulations are intended to prevent. Defendant's violations of the foregoing statues and regulations, as alleged in this Complaint, constituted negligence per se, and created a presumption of negligence.

199.  As a direct and proximate cause of result of these actions, Mr. Santos has sustained damages, experienced pain and suffering, including emotional distress, embarrassment, and humiliation.

200.  Mr. Santos is entitled to damages in an amount to be determined at trial.

## TWENTY-SIXTH CAUSE OF ACTION

### QUANTUM MERUIT

201.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

202.  Through his services, Mr. Santos conferred a significant benefit on Defendant.

203.  Defendant accepted this benefit, and Mr. Santos expected to be fairly and equitably compensated for his services in good faith.

204.  Defendant is liable under quantum meruit for the services that Mr. Santos provided.

205.  Mr. Santos has suffered harm as a result of Defendant's failure to provide him with adequate compensation, for which he is entitled to recover the reasonable value of the services he performed for Defendant.

206.  Defendant has failed to provide Mr. Santos with appropriate payment for this conferred benefit, the value of which is calculable.

## TWENTY-SEVENTH CAUSE OF ACTION

### FALSE IMPRISONMENT

207.  Mr. Santos re-alleges and incorporates each of the foregoing paragraphs by reference.

COMPLAINT

208.  Defendant knowingly and intentionally confined Mr. Santos within the Defendant's ranch by threatening arrest and deportation and hindered or prevented his ability to leave the ranch or travel unaccompanied, so as to deprive Mr. Santos of his freedom of movement.

209.  Defendant tracked Mr. Santos's phone usage without Mr. Santos's knowledge and consent. Defendant intimated to Mr. Santos that law enforcement officers roamed the area near the ranch and threatened Mr. Santos that if he ever tried to leave, law enforcement officers would find him. Through his illicit cockfighting enterprise, Defendant created a culture of fear and intimidation and demonstrated to Mr. Santos that he had numerous connections in organized crime. Defendant confiscated Mr. Santos's identification, inhibiting his ability to travel. Defendant held Mr. Santos in debt bondage, telling Mr. Santos he could not leave until he paid back an unpayable purported debt. Defendant used intimidation and psychological manipulation to prevent Mr. Santos from leaving.

210.  Mr. Santos was conscious of being confined and did not consent to his confinement.

211.  Defendant confined Mr. Santos knowingly and willfully with malice and disregard for his rights.

212.  As a proximate result of Defendant's conduct, Mr. Santos experienced pain and suffering, including emotional distress, embarrassment, and humiliation.

213.  Mr. Santos is entitled to compensatory and punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Mr. Santos respectfully requests that this Court enter judgment on his claims for relief as follows:

1.      Unpaid minimum and overtime wages, penalties and interest; liquidated damages; double damages; waiting time penalties; and wages in

1    compensation for missed rest periods, under the applicable sections of

2    the California Labor Code and of the Fair Labor Standards Act,

3    according to proof at trial.

4    2.    For general, compensatory, and special damages according to proof at

5    trial;

6    3.    Exemplary and punitive damages according to proof at trial;

7    4.    Statutory damages, liquidated damages, treble damages, penalties, and

8    all other forms of monetary relief recoverable under applicable law;

9    5.    Pre-judgment and post-judgment interest;

10    6.    Preliminary and permanent injunctive relief;

11    7.    Avoidance of transfers or obligations and attachment of any assets or

12    proceeds;

13    8.    Appropriate restitution;

14    9.    Reasonable costs and attorney's fees, and expenses incurred and

15    expended to date, according to proof at trial, to the extent allowable by

16    applicable law; and

17    10.    Such other and further relief as the Court deems just and proper.

18

19    DATED:  May 30, 2023                    Respectfully submitted,

20                                            ARNOLD & PORTER KAYE SCHOLER LLP

21

22                                            By:/s/ Wallace Wu

23                                            Wallace Wu
                                              Jesse Mentz

24                                            Oscar Ramallo

25                                            Stephanie Kang
                                              Skylar Williams

26

27                                            *Attorneys for Plaintiff*

28

## DEMAND FOR JURY TRIAL

Mr. Santos requests a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

DATED:  May 30, 2023                          Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER LLP


By:/s/ Wallace Wu
Wallace Wu
Jesse Mentz
Oscar Ramallo
Stephanie Kang
Skylar Williams

*Attorneys for Plaintiff*

COMPLAINT