Alejandro G. Ruiz, Bar No. 271999
agr@paynefears.com
Jessica A. Vidal, Bar No. 327616
jav@paynefears.com
PAYNE & FEARS LLP
Attorneys at Law
4 Park Plaza, Suite 1100
Irvine, California 92614
Telephone: (949) 851-1100
Facsimile: (949) 851-1212

Attorneys for Defendant and Counter-Claimant ROBERTO VARGAS HERNANDEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ARTURO SANTOS GARCIA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ROBERTO VARGAS HERNANDEZ,<br><br>　　　　Defendant.<br><hr>ROBERTO VARGAS HERNANDEZ,<br><br>　　　　Counter-Claimant,<br><br>　v.<br><br>ARTURO SANTOS GARCIA, an individual, LILIANA P. JARDON, an individual, and DOES 1 through 50, inclusive<br><br>　　　　Counter-Defendants. | Case No. 8:23-cv-00946-CJC-JDE<br><br>The Hon. Magistrate Judge Hon. Autumn D. Spaeth<br><br>**DEFENDANT/COUNTER-CLAIMANT ROBERTO VARGAS HERNANDEZ'S FIRST AMENDED COUNTERCLAIM FOR:**<br><br>1) Conversion<br>2) Trespass to Chattel/Personal Property<br>3) Negligence<br>4) Defamation and/or Libel<br>5) Defamation Per Se and/or Libel Per Se<br><br>Trial Date:　　　TBD |

　　　Defendant/Counter-Claimant ROBERTO VARGAS HERNANDEZ hereby alleges his compulsory and/or permissive Counterclaim as follows:

# PRELIMINARY ALLEGATIONS

1. At all times mentioned herein, Counter-Claimant ROBERTO VARGAS HERNANDEZ ("HERNANDEZ") has been a well-respected member of the Orange County community and a prominent businessman.

2. As an immigrant living his American Dream, HERNANDEZ cares deeply about helping other immigrants obtain their own American Dream. Accordingly, he took in Plaintiff and Counter-Defendant Arturo Santos Garcia ("GARCIA"), and welcomed him into his family. In return, GARCIA damaged HERNANDEZ'S property, stole from him, and defamed HERNANDEZ. HERNANDEZ now seeks remedies provided by common law.

# PARTIES

3. Defendant and Counter-Claimant HERNANDEZ is informed and believes and thereon alleges that Plaintiff and Counter-Defendant GARCIA is a citizen of Mexico, who illegally emigrated to the United States fraudulently using the birth certificate and California driver's license to gain entry by representing himself as a citizen. GARCIA is currently residing in Moreno Valley, California.

4. Defendant and Counter-Claimant HERNANDEZ is informed and believes and thereon alleges that Counter-Defendant LILIANA P. JARDON ("JARDON") was a waitress at a seafood restaurant in the general Lake Elsinore and Moreno Valley area, currently a waitress at a Mexican restaurant in the same region, and GARCIA's romantic partner. JARDON is currently residing in Moreno Valley, California.

5. Defendant and Counter-Claimant HERNANDEZ is a local business owner who operates a chicken restaurant in Anaheim, California and a ranch in Lake Elsinore, California. HERNANDEZ raises a variety of farm animals on his ranch. HERNANDEZ is a resident of Fullerton, California.

6. HERNANDEZ is without information and knowledge at this time concerning the true names and capacities of the Counter-Defendants named herein as Does 1 through 50, inclusive. Therefore, HERNANDEZ sues these Counter-Defendants by such fictitious names. Counter-Claimant will seek to amend this Counterclaim to allege such Counter-Defendants' true names and capacities when such have been ascertained. HERNANDEZ is informed and believes, and based thereon alleges, that each fictitiously named defendant was and is in some manner legally responsible for the events, breaches, injuries and damages alleged in this Counterclaim.

7. HERNANDEZ is informed and believes, and based thereon alleges, that at all times relevant to this action each of the Doe Counter-Defendants and each named Counter-Defendant was an agent, subcontractor, supplier, contractor, consultant, employee, joint venturer, partner, affiliated entity and/or independent contractor implicated by the allegations in Plaintiff's Complaint or of any other party asserting claims against Counter-Claimant.

## JURISDICTION AND VENUE

8. The court has supplemental jurisdiction over this counterclaim under 28 U.S.C. §1367, subdivision (a) and Federal Rule of Civil Procedure, Rule 13 because it arises out of the same transactions and occurrences alleged in Plaintiff's complaint, and the counterclaims are so related to Plaintiff's original federal

-3-
DEFENDANT/COUNTER-CLAIMANT ROBERTO VARGAS HERNANDEZ'S FIRST AMENDED COUNTERCLAIM

jurisdiction claims that they form a part of the same case or controversy.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because, upon information and belief, Plaintiff and Counter-Defendant resides in this district, and because a substantial portion of the events or omissions giving rise to this action occurred in this district.

## GENERAL ALLEGATIONS

10. HERNANDEZ is a local small businessowner who has operated a restaurant specializing in charbroiled chicken since 1983.

11. HERNANDEZ opened his restaurant with the American Dream in mind and with a dream to serve his local community with a family restaurant that served authentic, delicious, and affordable Mexican food.

12. HERNANDEZ still goes to his restaurant regularly and greets local patrons, including local families, professional wrestlers, and several well-known celebrities.

13. HERNANDEZ has served his local community and remained in business for over 40 years.  Thus, HERNANDEZ is a staple and prominent member of the Orange County community.  Indeed, HERNANDEZ and his restaurant business regularly receive honors and recognition by local municipalities for their service to the community.

14. HERNANDEZ'S restaurant is well-known in the general Southern California area.  The restaurant hosts autograph signing events with professional

wrestlers, athletes and celebrities. These events attract individuals from across Southern California to HERNANDEZ'S restaurant. Individuals who attend these events often post about the event and about HERNANDEZ'S restaurant location on social media; thus, creating free marketing opportunities for HERNANDEZ and his restaurant.

15. HERNANDEZ also owns and operates a ranch in Lake Elsinore, California, where he raises several farm animals, including chickens, goats, and horses.

16. HERNANDEZ is informed and believes and thereon alleges that GARCIA is a friend of HERNANDEZ'S long-time and trusted family friend in Mexico.

17. HERNANDEZ is informed and believes and thereon alleges that in approximately 2019, GARCIA successfully crossed the border into the United States through the port of entry located between San Diego, California, and Tijuana, Baja California, Mexico. HERNANDEZ is also informed and believes and thereon alleges that GARCIA crossed the border between Mexico and the United States by fraudulently presenting himself as an American citizen and by using another individual's United States birth certificate and California driver's license to gain entry into the country.

18. Upon GARCIA'S arrival in the United States, GARCIA made contact with HERNANDEZ and was allowed to live on HERNANDEZ'S ranch. As an immigrant himself, HERNANDEZ empathized with GARCIA. Additionally, since GARCIA was a friend of HERNANDEZ'S long-time and trusted family friend in Mexico, he took GARCIA in, gave him a place to live, and treated GARCIA like an

extended member of the family.

19. From approximately 2019 to 2022, GARCIA lived on HERNANDEZ'S ranch in Lake Elsinore, California. HERNANDEZ provided GARCIA with a two-bedroom trailer home in which to live. This trailer was equipped with a bathroom and kitchen. Upon information and belief, GARCIA lived in this trailer from approximately 2019 to at least 2020, but he thereafter continued to have access to the trailer and continued to cause damage to this trailer until he left the ranch.

20. In 2020, GARCIA moved into a one-bedroom trailer located in a different area of the ranch and remained in this trailer for the remainder of his time on the ranch.

21. GARCIA left his first trailer in complete disarray. He did not clean the trailer and did not dispose of his garbage. GARCIA damaged the shower faucet and clogged the trailer plumbing. He did not report this damage, and thus, did not even give HERNANDEZ a chance to timely fix any of the damage GARCIA caused. GARCIA also left food on plates, and left mud all over the trailer without cleaning it. Overall, he failed to maintain the trailer in a clean and sanitary condition. As a result, HERNANDEZ had to incur the costs to have the trailer cleaned and sanitized after GARCIA moved out of the ranch. Indeed, HERNANDEZ did not become aware of these damages until GARCIA left the ranch because GARCIA did not report any damage and HERNANDEZ did not enter the trailers GARCIA lived in out of respect for his privacy, and because HERNANDEZ, who is an amputee, is physically incapable of climbing the stairs required to enter the trailer. Unfortunately, the trailer remains broken and damaged due to GARCIA'S occupancy.


extended member of the family.

19. From approximately 2019 to 2022, GARCIA lived on HERNANDEZ'S ranch in Lake Elsinore, California. HERNANDEZ provided GARCIA with a two-bedroom trailer home in which to live. This trailer was equipped with a bathroom and kitchen. Upon information and belief, GARCIA lived in this trailer from approximately 2019 to at least 2020, but he thereafter continued to have access to the trailer and continued to cause damage to this trailer until he left the ranch.

20. In 2020, GARCIA moved into a one-bedroom trailer located in a different area of the ranch and remained in this trailer for the remainder of his time on the ranch.

21. GARCIA left his first trailer in complete disarray. He did not clean the trailer and did not dispose of his garbage. GARCIA damaged the shower faucet and clogged the trailer plumbing. He did not report this damage, and thus, did not even give HERNANDEZ a chance to timely fix any of the damage GARCIA caused. GARCIA also left food on plates, and left mud all over the trailer without cleaning it. Overall, he failed to maintain the trailer in a clean and sanitary condition. As a result, HERNANDEZ had to incur the costs to have the trailer cleaned and sanitized after GARCIA moved out of the ranch. Indeed, HERNANDEZ did not become aware of these damages until GARCIA left the ranch because GARCIA did not report any damage and HERNANDEZ did not enter the trailers GARCIA lived in out of respect for his privacy, and because HERNANDEZ, who is an amputee, is physically incapable of climbing the stairs required to enter the trailer. Unfortunately, the trailer remains broken and damaged due to GARCIA'S occupancy.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

22. Throughout his entire time on the ranch, GARCIA used, occupied, and had access to a larger kitchen and living room area located in a building next to his original trailer. HERNANDEZ also provided GARCIA golf carts and a Polaris RZR to transport himself around the ranch and make local trips off the ranch property. GARCIA frequently used these vehicles while living on the ranch.

23. While staying with HERNANDEZ, GARCIA damaged two golf carts beyond repair. As a result, HERNANDEZ incurred the costs to replace the golf carts.

24. Upon information and belief, GARCIA damaged these golf carts, in part, because he would drive them up and down the hill on the ranch at a reckless speed.

25. Like the golf carts, GARCIA also damaged the Polaris RZR beyond repair in 2022.

26. Moreover, HERNANDEZ provided GARCIA with three cell phones, with cell phone accounts under GARCIA'S name, while GARCIA lived on HERNANDEZ'S ranch. GARCIA damaged all them during his tenure on the ranch. Upon information and belief, GARCIA damaged the third cell phone HERNANDEZ provided to him in June 2022.

27. In 2022, GARCIA allowed his romantic partner, JARDON, and JARDON'S son to move into the trailer he occupied as his "guests." GARCIA and his guests cluttered the trailer and surrounding area with toys, gym equipment, and garbage.

28. Upon information and belief, JARDON was a waitress at a local restaurant and met GARCIA through an acquaintance of GARCIA. Because JARDON worked at a restaurant in the Lake Elsinore/Riverside County area, she interacted with several members of the community, including current and potential customers and referral sources for HERNANDEZ'S restaurant and individuals who attended autograph signings and posted about the signings and about HERNANDEZ'S restaurant on social media.

29. On or about June 25, 2022, GARCIA and his live-in guests, including JARDON, left the ranch without notice. When they left the ranch, they broke windows on the building GARCIA occupied and they disconnected the security cameras put in place to deter non-residents or burglars from entering the property.

30. GARCIA and his guests also left the trailer in complete disarray. They failed to throw away any trash including a large amount of fast-food wrappers, failed to clean any used pots, pans and plates—leaving food on them, and failed to dispose of old toys and gym equipment. Additionally, they broke the stairs leading up to the front door of the trailer and broke a door to the trailer off its hinges. As a result, HERNANDEZ had to incur the costs to have the trailer cleaned and to dispose of all the garbage and waste GARCIA and his guests caused. Unfortunately, the trailer remains broken and damaged due to GARCIA'S occupancy.

31. HERNANDEZ is informed and believes and thereon alleges that before he left the ranch, GARCIA stole several tools and ranch equipment from HERNANDEZ. Specifically, GARCIA stole drills, saws, mallets, hammers, tool box with wrenches, and screwdrivers. GARCIA stole these items in approximately June 2022.

32. After HERNANDEZ took GARCIA in, treated GARCIA like a member of his family, welcomed him at family events and holidays, bought him new clothes when he gained approximately 40 pounds, and even bought him presents. Defendant is informed and believes and thereon alleges that GARCIA left without notice after trashing HERNANDEZ'S property and stealing items from HERNANDEZ.

33. To add insult to injury, GARCIA made false, inflammatory, and degrading statements about HERNANDEZ and HERNANDEZ'S business, including statements to JARDON and other third parties who socialized and interacted with current and potential customers and referral sources of HERNANDEZ'S restaurants, and to individuals who attend autograph signings and who provide free marketing for HERNANDEZ'S restaurant through social media. GARCIA even went as far as falsely accusing HERNANDEZ of committing several crimes relating to alleged "human trafficking" and "abuse" of GARCIA. Defendant is informed and believes and thereon alleges that GARCIA made these claims for the sole purpose of embarrassing HERNANDEZ and thereafter seeking money from HERNANDEZ. Upon information and belief, GARCIA'S defamatory statements to JARDON and others were made on a continuous ongoing basis beginning at least one year prior to the complaint and continuing on to the present. GARCIA'S defamatory statements are separate and independent from, and in many instances predate, the allegations made in GARCIA'S complaint, statements to his counsel, or statements made in contemplation of this litigation. These statements include the following:

    a. Statements to JARDON that HERNANDEZ enslaved him on his ranch;

b. Text messages to JARDON that HERNANDEZ enslaved him on his ranch;

c. Emails to JARDON that HERNANDEZ enslaved him on his ranch;

d. Direct messages to JARDON that HERNANDEZ enslaved him on his ranch;

e. Statements to JARDON that HERNANDEZ forced him to work on HERNANDEZ'S ranch for 16 hours a day, 7 days a week;

f. Text messages to JARDON that HERNANDEZ forced him to work on HERNANDEZ'S ranch for 16 hours a day, 7 days a week;

g. Emails to JARDON that HERNANDEZ forced him to work on HERNANDEZ'S ranch for 16 hours a day, 7 days a week;

h. Direct messages to JARDON that HERNANDEZ forced him to work on HERNANDEZ'S ranch for 16 hours a day, 7 days a week;

i. Statements to JARDON that HERNANDEZ is a criminal and engaged in criminal behavior regarding human trafficking and abuse to GARCIA;

j. Text messages to JARDON that HERNANDEZ is a criminal and

engaged in criminal behavior regarding human trafficking and abuse to GARCIA;

k. Emails to JARDON that HERNANDEZ is a criminal and engaged in criminal behavior regarding human trafficking and abuse to GARCIA;

l. Direct messages to JARDON that HERNANDEZ is a criminal and engaged in criminal behavior regarding human trafficking and abuse to GARCIA;

m. Statements to JARDON that HERNANDEZ abused and threatened GARCIA;

n. Text messages to JARDON that HERNANDEZ abused and threatened GARCIA;

o. Emails to JARDON that HERNANDEZ abused and threatened GARCIA;

p. Direct messages to JARDON that HERNANDEZ abused and threatened GARCIA;

q. Statements to JARDON that HERNANDEZ only fed GARCIA one meal a day and denied him additional food;

r. Text messages to JARDON that HERNANDEZ only fed GARCIA one meal a day and denied him additional food;

DEFENDANT/COUNTER-CLAIMANT ROBERTO VARGAS HERNANDEZ'S FIRST AMENDED COUNTERCLAIM

s. Emails to JARDON that HERNANDEZ only fed GARCIA one meal a day and denied him additional food;

t. Direct messages to JARDON that HERNANDEZ only fed GARCIA one meal a day and denied him additional food;

u. Statements to JARDON that HERNANDEZ socially isolated GARCIA;

v. Text messages to JARDON that HERNANDEZ socially isolated GARCIA;

w. Emails to JARDON that HERNANDEZ socially isolated GARCIA;

x. Direct messages to JARDON that HERNANDEZ socially isolated GARCIA;

y. Statements to JARDON that HERNANDEZ did not properly pay GARCIA;

z. Text messages to JARDON that HERNANDEZ did not properly pay GARCIA;

aa. Emails to JARDON that HERNANDEZ did not properly pay GARCIA;

bb. Direct messages to JARDON that HERNANDEZ did not

properly pay GARCIA;

cc. Statements to JARDON that HERNANDEZ stole and/or confiscated GARCIA'S identification documents;

dd. Text messages to JARDON that HERNANDEZ stole and/or confiscated GARCIA'S identification documents;

ee. Emails to JARDON that HERNANDEZ stole and/or confiscated GARCIA'S identification documents;

ff. Direct messages to JARDON that HERNANDEZ stole and/or confiscated GARCIA'S identification documents.

34. Additionally, upon information and belief, these statements were made to JARDON in front of current and potential customers and event attendees of HERNANDEZ'S restaurant.

35. Upon information and belief, JARDON subsequently repeated these false, inflammatory, and degrading statements to current and potential customers of HERNANDEZ'S restaurant during the same time period while knowing them to be false.

## FIRST CAUSE OF ACTION
**(Conversion – Against Counter-Defendant GARCIA)**

36. HERNANDEZ hereby realleges and incorporates herein by reference Paragraphs 1 through 35, as though fully set forth herein.

37. Upon information and belief GARCIA is currently in possession of several tools essential for his ranch operations including, but not limited to, drills, saws, mallets, wrenches, screwdrivers, etc., all of which were previously provided to GARCIA, but were and continued to be owned by HERNANDEZ.

38. HERNANDEZ demanded that GARCIA immediately return to HERNANDEZ all such tools he took from HERNANDEZ, specifically, the drills, saws, mallets, a tool box with wrenches, and screwdrivers.

39. GARCIA, without justification or privilege, has failed or refused to return the tools, specifically the drills, and saws, mallets, a tool box with wrenches, and screwdrivers to HERNANDEZ.

40. GARCIA'S conduct is willful, wanton, malicious, and in bad faith.

41. As a consequence of the foregoing, HERNANDEZ has suffered and will continue to suffer irreparable harm and loss, including interference with HERNANDEZ'S ranch operations including stalling repairs and work due to the loss of the tools GARCIA took and the discovery that these tools were missing while others attempted to perform tasks in which the tools are needed.

42. HERNANDEZ has been damaged in an amount to be proven at trial as a result of GARCIA'S actions in converting several expensive tools.

## SECOND CAUSE OF ACTION

**(Trespass to Chattel/Personal Property – Against Counter-Defendant GARCIA)**

43. HERNANDEZ hereby realleges and incorporates herein by reference Paragraphs 1 through 42, as though fully set forth herein.

44. HERNANDEZ owned and had a right to possess the tools, specifically the drills, and saws, mallets, a tool box with wrenches, and screwdrivers.

45. GARCIA intentionally accessed and took tools provided to him by HERNANDEZ for his use for work.

46. Upon information and belief GARCIA took these tools, removed them from the property and has maintained possession of the tools, which are necessary for HERNANDEZ to conduct his ranch operations.

47. HERNANDEZ did not consent to GARCIA taking the tools off his property or for use of the tools outside of GARCIA'S work duties.

48. In committing these acts, GARCIA acted with malice, oppression, or fraud and is therefore subject to punitive damages.

49. As a direct and proximate result of GARCIA'S actions, HERNANDEZ has suffered damages as a result of his inability to access and utilize the tools for a substantial, and ongoing, period of time in an amount to be proven at trial.

# THIRD CAUSE OF ACTION
## (Negligence – Against Counter-Defendant GARCIA)

50. HERNANDEZ hereby realleges and incorporates herein by reference Paragraphs 1 through 49, as though fully set forth herein.

51. GARCIA stood in a special relationship with HERNANDEZ, based on the facts alleged in this Counterclaim, including but not limited to the following: GARCIA lived in housing accommodations provided to him by HERNANDEZ. GARCIA had a duty not to damage the accommodations, keep the accommodations in a clean and sanitary condition, and dispose of garbage, keep electric, gas and plumbing in a clean and sanitary condition, and to not permit another or himself to destroy, damage or deface the trailers he occupied, the housing facilities, and equipment.

52. GARCIA owed a reasonable person standard of care to HERNANDEZ when he stayed on HERNANDEZ'S property.  As an example, the California Civil Code section 1941.2 imposes duties on tenants, including the duty to (1) keep "the premises which he occupies and uses clean and sanitary;" (2) "[t]o dispose from his dwelling unit of all rubbish, garbage and other waste, in a clean and sanitary manner"; (3) "[t]o properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits"; and (4) "not to permit any person on the premises, with his permission, to willfully or wantonly destroy, deface, damage, impair or remove any part of the structure or dwelling unit or the facilities, equipment, or appurtenances thereto, nor himself do any such thing."  The standard under Civil Code section 1941.2 is reasonable for anyone invited to be guest on one's property and should be adopted as the reasonable standard here.  Accordingly, GARCIA owed the same duty of care to

HERNANDEZ as an individual who lived on HERNANDEZ'S ranch.

53. By virtue of the relationship described above, GARCIA'S duty of reasonable care toward HERNANDEZ under the circumstances included but was not limited to: (1) keeping the trailers and kitchen he occupied in a clean and sanitary condition; (2) disposing of all rubbish, garbage, and other waste in his trailer in a clean and sanitary manner, (3) maintaining the electrical appliances, gas and plumbing fixtures he used and occupied while living on the ranch in a clean and sanitary condition and (4) refraining from willfully or wantonly destroying, any part of the trailer, golf carts and other vehicles occupied for his travel around the ranch facilities, his living facilities and equipment on the ranch.

54. GARCIA breached these duties owed to HERNANDEZ by the acts and omissions alleged in this Counterclaim, including but not limited to damaging the trailers, security cameras, and vehicles he used and occupied during his time on the ranch; failing to dispose of rubbish, garbage and waste; and upon information and belief, allowing other persons, including his guests, to occupy and wantonly cause damage to HERNANDEZ'S trailer and other facilities used and occupied by GARCIA during his tenancy.

55. As a direct and proximate result of these actions, HERNANDEZ has sustained damages, including damages for repairs, waste disposal and replacement of property.

56. HERNANDEZ is entitled to damages in an amount to be determined at trial.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

# FOURTH CAUSE OF ACTION

## (Defamation and/or Libel - Against All Counter-Defendants)

57. HERNANDEZ hereby realleges and incorporates herein by reference Paragraphs 1 through 56, as though fully set forth herein.

58. HERNANDEZ has at all relevant times enjoyed an outstanding reputation as a member of the local community in Orange County, California, and in Lake Elsinore, California, and as a prominent local businessman.

59. GARCIA made false and derogatory statements alleged above about HERNANDEZ and HERNANDEZ'S restaurant to JARDON and HERNANDEZ'S current or potential customers.

60. JARDON thereafter repeated and published these statements to HERNANDEZ'S current or potential customers knowing them to be false.

61. Defendant and Counter-Claimant is informed and believes and thereon alleges that JARDON and other individuals to whom GARCIA and JARDON published these defamatory statements had actual or potential business relationships with HERNANDEZ.

62. The statements by GARCIA and JARDON were not made in connection with a public issue or an issue of public interest. Rather, the statements were made for a personal financial purpose.

63. GARCIA and JARDON failed to use reasonable care to determine the truth or falsity of these statements, and, in fact, made the statements knowing they

were false and with the malicious intent to harm HERNANDEZ and his business.

64. As a proximate result of GARCIA and JARDON making these statements, HERNANDEZ has suffered reputational loss, loss of business, and other actual damages in an amount to be proven at trial.

65. GARCIA and JARDON'S actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of HERNANDEZ, and, therefore, HERNANDEZ is entitled to an award of exemplary and punitive damages against GARCIA and JARDON in a sum that will be established according to proof at trial sufficient to punish HERNANDEZ and JARDON and deter others from engaging in similar misconduct.

## FIFTH CAUSE OF ACTION

**(Defamation Per Se and/or Libel Per Se - Against All Counter-Defendants)**

66. HERNANDEZ hereby realleges and incorporates herein by reference Paragraphs 1 through 65, as though fully set forth herein.

67. The false and derogatory statements, including written statements, GARCIA and JARDON made, as alleged above about HERNANDEZ and his business operations were not only false but malicious, reckless, and falsely accuse HERNANDEZ of engaging in several different crimes. Thus, these statements constitute defamation per se and give rise to the presumption of defamation.

68. As a proximate result of GARCIA and JARDON making these statements, HERNANDEZ has suffered reputational loss, loss of business, and other actual damages in an amount to be proven at trial.

69. GARCIA and JARDON'S actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of HERNANDEZ, and, therefore, HERNANDEZ is entitled to an award of exemplary and punitive damages against GARCIA and JARDON in a sum that will be established according to proof at trial sufficient to punish HERNANDEZ and deter others from engaging in similar misconduct.

## **PRAYER FOR RELIEF**

WHEREFORE, HERNANDEZ prays for relief as follows:

1. For declaratory relief as described above;
2. For general, compensatory, and special damages according to proof at trial;
3. Exemplary and punitive damages according to proof at trial;
4. For attorneys' fees and costs to the full extent permitted by law;
5. For interest at the maximum rate permitted by law; and
6. For such other and further relief as the Court may deem just and proper.

DATED: August 3, 2023                PAYNE & FEARS LLP
                                     Attorneys at Law


                                     By:   /s/ Alejandro G. Ruiz
                                           ALEJANDRO G. RUIZ
                                           JESSICA A. VIDAL

                                     Attorneys for Defendant and Counter-Claimant ROBERTO VARGAS HERNANDEZ

4893-4668-8881.3

-20-
DEFENDANT/COUNTER-CLAIMANT ROBERTO VARGAS HERNANDEZ'S FIRST AMENDED COUNTERCLAIM